No. 99,495

IN THE MATTER OF ROBERT E. WONDER, *Respondent.*

(179 P.3d 451)

Opinion filed March 28, 2008.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with was him on the formal complaint for petitioner.

*John J. Ambrosio,* of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause for respondent, and *Robert E. Wonder,* respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against Respondent, Robert E. Wonder, an attorney licensed to practice law in Kansas since April 1984. Respondent's last registration address with the Clerk of the Appellate Courts of Kansas was in Kansas City, Missouri.

The formal complaint charged Respondent with violating Kansas Rules of Professional Conduct (KRPC) 1.1 (2007 Kan. Ct. R. Annot. 384) (competence); KRPC 3.2 (2007 Kan. Ct. R. Annot. 503) (expediting litigation); KRPC 3.3(d) (2007 Kan. Ct. R. Annot. 508) (candor toward tribunal); and KRPC 8.4(d) (2007 Kan. Ct. R. Annot. 559) (misconduct prejudicial to the administration of justice).

In answer to the complaint, Respondent admitted violations of KRPC 1.1, KRPC 3.2, and KRPC 3.3(d). He appeared in person and through counsel at his disciplinary hearing, where the Deputy Disciplinary Administrator dropped the KRPC 8.4(d) charge. The panel filed its final hearing report in October 2007. Respondent took no exceptions.

"In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties, and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citations omitted.]

"This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the

same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.]" *In re Lober*, 276 Kan. 633, 636-37, 78 P.3d 442 (2003).

The hearing panel made the following findings of fact:

In 1987, Respondent drafted the Last Will and Testament of David F. Dowling, Respondent's good friend. In pertinent part, the will provided:

"I appoint Robert E. Wonder, my attorney, of Leawood, Kansas and my brother, Patrick Michael Dowling of Olathe, Kansas as Co-Trustees of the trusts herein created. If either or both should be unwilling or unable to serve, I then appoint my sister, Barbara Ann Gawlik of Stanley, Kansas, as Successor Trustee hereunder; I further appoint my brother Patrick Michael Dowling of Olathe, Kansas and my sister, Barbara Ann Gawlik of Stanley, Kansas, as Co-Personal Representatives of this my Last Will and Testament. If either should be unwilling or unable to serve, I hereby appoint my attorney, Robert E. Wonder of Leawood, Kansas to serve as Successor Personal Representative herein."

Dowling died unexpectedly on April 23, 2004. His widow, Gayla, met with Respondent regarding Dowling's estate. Following their meeting, and at Gayla's request, Respondent prepared a Petition for Probate of Will and Issuance of Letters Testamentary. In the petition, Respondent provided the names and addresses for Patrick Dowling and Gawlik as the executors named in the will. The petition also stated, however, that "the appointment of an executor is necessary for the collection, conservation and administration of the Estate; Gayla Dowling, whose residence and address is [omitted], is a suitable, competent and qualified person to be granted Letters Testamentary, without bond, as provided by the last will and testament."

On May 13, 2004, Gayla signed and verified the petition as Petitioner. On May 20, 2004, Respondent filed the pleadings with the court, including a proposed Order Admitting Will to Probate. At that time, Respondent requested the court sign the order and issue the Letters Testamentary. The court did so.

The court's order included the following language:

"Gayla Dowling is named as Executor in decedent's Last Will and Testament, and is a suitable and competent person to be granted Letters Testamentary, with-

out bond, in accordance with the directions of decedent's Last Will and Testament.

. . . .

"Gayla Dowling is appointed Executor of the 'Last Will and Testament of David F. Dowling,' deceased, to serve without bond, and upon filing of oath, Letters Testamentary are granted to Gayla Dowling."

Gayla executed an Oath of Executor and received the Letters Testamentary.

Respondent had not informed Patrick Dowling that he had been named as co-personal representative of his brother's estate and co-trustee of his brother's trusts. Respondent also had not informed Gawlik that she had been named co-personal representative of her brother's estate and successor trustee of her brother's trusts. Respondent also had not informed the court of the will's provisions regarding the roles of Patrick Dowling and Gawlik.

On October 7, 2004, Respondent contacted Patrick Dowling to request his resignation as co-trustee of the trusts established in the will. Shortly thereafter, Patrick learned for the first time that he and his sister had been named co-personal representatives. The siblings retained attorney David Hughes to represent them.

On October 26, 2004, Hughes wrote to Respondent, requesting that Gayla resign as executor and that Respondent resign as co-trustee.

On November 8, 2004, Hughes filed an Amended Petition for Probate of the Will and Issuance of Letters Testamentary. His clients executed and verified the amended petition, which contained the following allegations:

"2. Petitioners have an interest in decedent's estate as the named executors under the last will and testament of David F. Dowling, dated September 15, 1987, which has previously been admitted to probate.

"3. David F. Dowling died testate at Shawnee, Kansas, on April 23, 2004; at the time of death the decedent was a resident of Johnson County, Kansas, and a citizen of the United States.

"4. The court has previously received a petition for probate and issuance of [letters] testamentary filed by [Gayla] Dowling on May 13, 2004, from which letters testamentary were issued.

"5. On October 7, 2004, petitioner Patrick M. Dowling, received a phone call from Robert E. Wonder, attorney for the estate, requesting that he resign as trustee. Patrick M. Dowling was not aware that he was designated as a

trustee of the estate of David F. Dowling. On October 9, 2004, Patrick M. Dowling received a letter from Robert E. Wonder dated October 7, 2004, which included a letter dated October 6, 2004, from Rick Enna[,] a financial planner, requesting that he resign as trustee of the testamentary trust of David F. Dowling.

Upon receiving these letters, Patrick M. Dowling requested a copy of the last will and testament of David F. Dowling, wherein he first discovered that he and Barbara A. Gawlik were designated as executors of the estate of David F. Dowling, and further that he was co-trustee of the testamentary trust. Neither Patrick M. Dowling [n]or Barbara A. Gawlik [was] ever provided a copy of this last will and testament or notified of their responsibilities. Barbara Gawlik has never received any notice of her being named executor of her brother's estate.

"6. Robert E. Wonder, the attorney for the estate, identified Patrick M. Dowling and Barbara A. Gawlik, as the named executors of the last will and testament in the previously filed petition, but failed to seek a declination for them to serve as executor[s], or ever notif[y] them of their responsibilities.

. . . .

"13. Petitioners have no idea why the attorney for [the] estate failed to notify them or [seek] their declinations to serve as executors for the estate.

"14. The decedent certainly had many years to change the designated executors and made no effort to alter it. The petitioners are anxious to fulfill the responsibilities as executors of their brother's estate. The appointment of [Gayla] Dowling as executor of this estate, without the knowledge or consent of the named executors should, therefore, be set aside and the petitioners should be appointed to the position that they were named by the decedent.

"15. Petitioners sent correspondence dated October 26, 2004, to Robert E. Wonder, attorney for the estate, requesting that [Gayla] Dowling resign as executor and accept the appointment of petitioners, Patrick M. Dowling and Barbara A. Gawlik, as executors of the estate.

"16. It is the petitioners['] belief that substantial financial decisions have been undertaken without the knowledge or consent of the named executors and would ask the court to order [Gayla] Dowling to immediately turn over all of the records relating to the estate of David F. Dowling. Petitioners would further note that since the appointment of [Gayla] Dowling as executor of this estate more than five months have elapsed and no inventory and valuation has been filed with the court."

A hearing was held on the Amended Petition, after which Patrick Dowling and Gawlik were appointed as co-executors. Respondent

notified Hughes on June 20, 2005, that he was withdrawing as co-trustee.

Based on the foregoing findings of fact, the hearing panel concluded as a matter of law that Respondent violated KRPC 1.1, which requires lawyers to provide competent representation to their clients, and provides: "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The panel concluded that Respondent failed to competently represent the estate by failing to inform the co-personal representatives of their appointment, and by preparing and filing a petition that named Gayla Dowling as executor without first seeking and obtaining declinations from Patrick Dowling and Gawlik. The panel also concluded that Respondent violated KRPC 3.2, which requires an attorney to make reasonable efforts to expedite litigation consistent with the interests of the client. Here, Respondent failed to expedite the probate of Dowling's estate, causing a delay, which constituted a violation of KRPC 3.2.

Finally, the panel concluded that Respondent also violated KRPC 3.3, which, in pertinent part, imposes special obligations on attorneys in ex parte proceedings with the court.

"In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." KRPC 3.3(d).

The panel noted that

"*ex parte* proceedings, by their very nature, are expedited proceedings. The opportunity for the court to compare documents and conduct extensive analysis is limited. In this case, the Respondent presented the documents to the court that he had previously prepared. At the time the Respondent presented the documents to the court, he provided no additional explanation or information regarding the contents."

Respondent's proposed order contained false information, as Gayla was not named as executor in the will. Because the documents were inconsistent with the will, and because Respondent had not previously notified the named executors and obtained their declina-

tions, it was incumbent upon Respondent to inform the court of the irregularities.

In recommending discipline, the panel considered the following factors based on the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 ed.) (Standards):

> "*Duty Violated.* The Respondent violated his duty to his client to provide competent representation. Additionally, the Respondent violated his duty to the legal system to refrain from interfering with a legal proceeding. Finally, the Respondent violated his duty to the legal system to refrain from providing false information and to refrain from improperly withholding material information.
>
> "*Mental State.* The Respondent negligently violated his duties.
>
> "*Injury.* As a result of the Respondent's misconduct, the Respondent caused potential harm to the estate of David F. Dowling."

### The panel found the following aggravating factors present:

> "Prior Disciplinary Offenses. The Respondent was previously informally admonished by the disciplinary authorities in Missouri for failing to properly communicate with his client. Apparently, the Respondent's liability carrier paid the Respondent's client, affected by the misconduct in the underlying Missouri disciplinary case, $250,000.
>
> "Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 3.2, and KRPC 3.3(d). As such, the Respondent committed multiple offenses.
>
> "Vulnerability of Victim. The true victim in this case was the estate of David F. Dowling. Mr. Dowling intended for his brother and sister to be the Co-Personal Representatives of his estate. However, because of the Respondent's misconduct, court action was required to accomplish his wishes. Thus the victim in this case was vulnerable to the Respondent's misconduct.
>
> "Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1984. At the time the Respondent engaged in misconduct the Respondent had been practicing law for a period of 20 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct."

### The panel also considered the following mitigating factors:

> "Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. The Respondent has had significant personal problems during the past several years. He has suffered health problems, the loss of his friend, David F. Dowling, the loss of his mother, the loss of his father, and the loss of his father-in-law. The Hearing Panel concludes that the Respondent's personal problems contributed to the misconduct, in this case.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Kansas City, Missouri. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel."

A majority of the panel found additional mitigating factors to be present:

"Absence of Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse."

The panel also considered the following two Standards:

"Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." Standard 6.13.

"Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding." Standard 6.23.

The Disciplinary Administrator recommended published censure. Respondent sought informal admonishment. A majority of the hearing panel ultimately recommended published censure. One member of the panel dissented from several of the panel's conclusions and its recommended discipline, stating:

"In my opinion, Respondent's conduct was motivated by dishonesty and selfishness. The Respondent provided false information in a pleading. Because the Respondent provided the Court with false information in a proposed order, I conclude that Respondent violated KRPC 8.4(c). The Respondent's misconduct warrants a suspension from the practice of law."

We hold that the panel's findings of fact and the majority's conclusions of law are amply sustained by the evidence and hereby

adopt them as our own. Further, while the panel majority's recommended discipline is advisory only, and sanction is within our discretion, a majority of this court agrees that the discipline of published censure in accordance with Supreme Court Rule 203(a)(3) (2007 Kan. Ct. R. Annot. 261) is appropriate for Respondent's violations. A minority of the court would impose a more severe sanction.

IT IS THEREFORE ORDERED that Robert E. Wonder be and is hereby censured in accordance with Supreme Court Rule 203(a)(3) for the violations of KRPC 1.1, 3.2, and 3.3(d).

IT IS FURTHER ORDERED that this opinion be published in the Kansas Reports and that the costs of these proceedings be assessed to Respondent.